NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL DICKERSON, | |
| Plaintiff, | |
| v. | Civil Action No. 12-CV-05585 |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,[1] | **OPINION** |
| Defendant. | |

BUMB, United States District Judge

Plaintiff Michael Dickerson (the "Plaintiff"), appearing pro se, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits (DIB) and supplemental security income (SSI). Before the Court is the Commissioner's motion for judgment on the pleadings requesting that the Court affirm the Commissioner's decision.

I.   **STANDARD OF REVIEW**

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the

---

[1] Carolyn W. Colvin is now the Acting Commissioner of Social Security and, therefore, she is automatically substituted as the defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

1

inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." Ahearn v. Comm'r of Soc. Sec., 165 F. App'x 212, 215 (3d Cir. 2006) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984); Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting

Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted); see also Guerrero v.

Comm'r of Soc. Sec., No. 05-1709, 2006 WL 1722356, at *3 (D.N.J.

June 19, 2006) ("The [administrative law judge's] responsibility

is to analyze all the evidence and to provide adequate

explanations when disregarding portions of it."), aff'd, 249 F.

App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent

medical and non-medical evidence and "explain [any]

conciliations and rejections," Burnett v. Comm'r of Soc. Sec.,

220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at

42 ("Although we do not expect the [administrative law judge] to

make reference to every relevant treatment note in a case where

the claimant . . . has voluminous medical records, we do expect

the ALJ, as the factfinder, to consider and evaluate the medical

evidence in the record consistent with his responsibilities

under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the

reviewing court must also determine whether the Administrative

Law Judge ("ALJ") applied the correct legal standards. See

Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes

v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review
of legal issues is plenary. Sykes, 228 F.3d at 262 (citing
Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir.
1999)).

## "Disability" Defined

The Social Security Act ("SSA") defines "disability" as the
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not
less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act
further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential
analysis for evaluating a claimant's disability, as outlined in
20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428,
the Third Circuit described the Commissioner's inquiry at each
step of this analysis:

4

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

**II.  BACKGROUND**

**a. Procedural History**

On March 25, 2008, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of April 15, 2004. (Administrative Record "R." 18.) These claims were denied on July 25, 2008 and again upon reconsideration on October 9, 2008. (Id.) Plaintiff then requested a hearing, which was held before the Honorable Richard J. Ortiz-Valero, ALJ, on October 1, 2010. Plaintiff appeared at the hearing and was represented by counsel. (Id.) The ALJ issued his decision on October 18, 2010, finding that Plaintiff was not disabled and denying DBI and SSI. (R. 18-31.) Plaintiff requested review of the ALJ's decision, which was denied on July 13, 2012 (R. 1-3) and thus the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. § 404.981.

**b. Hearing Testimony**

Plaintiff is a 6'2", 44-year-old male whose weight during the relevant period has ranged from 345 to 508 pounds. (See R. 41, 44; see also id. at 296, 502.) Plaintiff attended a special high school for at least a portion of his high school instruction and has a twelfth grade education. (Id. at 51-52.) Plaintiff testified that he has difficulty reading and writing such that he is unable to read a menu or newspaper, but he also testified that he has filled out application(s) for benefits or

jobs. (Id. ("Q. When you filed the applications for benefits, or for jobs how did you do that? A. Either I would – my sister would – how I got the job with the construction job [sic], my younger brother was working there and he got me in.").) Plaintiff previously worked in asphalt construction for approximately 20 years during which he started out shoveling asphalt and then worked his way into operating heavy machinery. (Id. at 41.)

In April 2004, Plaintiff began experiencing back and knee problems, as well as heart issues, which prevented him from continuing to work. (Id. at 42, 45, 57.) Plaintiff testified that he experiences shortness of breath, which combined with the back and knee pain, makes movement difficult though Plaintiff is able to care for himself. (See id. at 47-48, 50, 52-53.) Plaintiff has tried to lose weight through diet and exercise but has been unsuccessful despite the fact that there is no medical reason for his obesity. (Id. at 58.) He lives with his mother and son, but his sister comes over and does the cleaning and upkeep of the house. (Id. at 49.) As to his functional abilities, Plaintiff testified that he is able to stand for approximately 15-20 minutes at a time, sit for around 10-15 minutes at a time, and carry up to 20 pounds but only short distances. (Id. at 53, 59.) He further testified that he has

difficulty sleeping and spends his time watching TV, and socializes with friends outside of his home. (Id. at 54, 59-60.)

### c. The ALJ's Decision

Applying the requisite five-step analysis described above, the ALJ concluded that Plaintiff meets the insured status requirements of the SSA through March 31, 2010 but has not engaged in substantial gainful activity ("SGA") since April 15, 2004, the alleged onset date. (R. 20.) At Step 2, the ALJ found that Plaintiff suffers the following severe impairments: lumbar pain, degenerate disc disease, congestive heart failure, bronchitis, sleep apnea, and morbid obesity. (R. 20.) He further found that Plaintiff's dysthymic disorder, a "mood disorder that is usually mild in severity," did not constitute a severe impairment. (Id. at 24, 72.) In making these findings, the ALJ relied on Plaintiff's medical records related to his conditions, including:

- The medical reports of Dr. Marvin Wallach, Plaintiff's family doctor (Exs. 4F, 7F, 15F);
- The medical records of West Jersey Health System related to Plaintiff's hospitalization for chest pain and shortness of breath (Exs. 1F, 2F, 3F);
- The medical reports of Dr. Ronald A. Cohen, a treating cardiologist, concerning Plaintiff's congestive heart failure and atrial fibrillation (Exs. 5F, 6F, 14F, 17F, 19F, 20F);
- The report of consulting physician Dr. Ken Klausman related to Plaintiff's chest and spinal pain (Ex. 9F);
- The report of Dr. Komal A. Malik, an associate in Dr. Wallach's office (Ex. 18F);

- The Physical RFC Assessments conducted by Drs. A. Cirillo and Joshua Weisbrod, medical consultants (Exs. 13F, 16F);
- The Psychiatric Review Technique and the Mental RFC Assessment completed by Dr. Joseph Wieliczko, medical consultant (Exs. 10F, 11F).

At Step 3, the ALJ relied heavily on the testimony of medical expert, Dr. Jose Rolon, and concluded that the Plaintiff does not have an impairment or combination of impairments that meets or is medically equivalent to a listed impairment in 20 C.F.R. § 404.1520(d). (Id. at 24-25.)

The ALJ then considered Plaintiff's residual functional capacity ("RFC"). He determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) and that Plaintiff

> is able to lift/carry 20 pounds occasionally and 10 pounds frequently, he can sit for 6 hours, alternating every two hours, in an 8-hour day. He can stand and walk for 2 hours in an 8 hour day, he can occasionally climb stairs, and can never stoop, crouch, kneel or crawl, and should avoid exposure to unprotected heights and avoid concentrated exposure to gases, [fumes], dust, and to extreme heat and extreme cold.

(Id. at 25.) Given this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform any past relevant work, which was medium and skilled. (Id. at 29.) Moreover, according to the impartial vocational expert, none of Plaintiff's skills were transferrable but the ALJ found this to be immaterial to the disability determination because of the Medical-Vocational Guidelines. (Id.) The ALJ further determined that Plaintiff has

a high school education and is able to communicate in English. (Id.)

Finally, at Step 5, the ALJ determined that there are significant numbers of jobs in the national economy that Plaintiff can perform given his age, education, work experience, and RFC. (Id.) The ALJ relied upon the testimony of a vocational expert who determined that Plaintiff would be able to perform the requirements of a Stem Mounter, DOT 692.685-206, Patcher, DOT 789.687-174, and/or a Getterer, DOT 692.685-266, all of which are unskilled, sedentary positions. (Id. at 30.) Therefore, the ALJ concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act from April 15, 2004, the alleged onset date, through October 18, 2010, the date of the ALJ's decision. (Id. at 18, 30.)

## III.  LEGAL ANALYSIS

The Court has gone to great lengths to identify and articulate the legal arguments upon which Plaintiff grounds his appeal. Although it is unclear from Plaintiff's submissions, the Court understands him to be challenging the ALJ's decision on several grounds: (1) the ALJ failed to consider Plaintiff's depression and agoraphobia as a severe impairment; (2) the ALJ failed to account for the significant limitations suggested by the treating physicians or for the impact of Plaintiff's obesity on his ability to do basic work functions; (3) the ALJ

10

improperly relied upon the testimony of the vocational expert,
and his determination that other work exists in the national
economy is unsupported.[2]

## 1. Mental Impairments

Plaintiff appears to assert that the ALJ committed error by
failing to consider as a severe impairment Plaintiff's
"documented depression" and associated agoraphobia. (See Opp.
1.) "An impairment is 'severe' if the evidence presented by a
claimant demonstrates more than a 'slight abnormality,' having
'more than a minimal effect' on the claimant's ability to do
'basic work activities.'" Rosa v. Comm'r of Soc. Sec., No. 12-

---

[2] In addition, Plaintiff claims that his due process and
equal protection rights were violated. (See, e.g., Opp., Dkt.
Ent. 24 at 1.) However, he fails to identify any particular
constitutional violations or to submit evidence that he was
treated differently than other Social Security claimants.
Rather, his claims focus on this Court's alleged failure to
provide him with counsel in this proceeding. However, Plaintiff
does not have a right to counsel in this matter. See Gorrell v.
Comm'r of Soc. Sec., 449 F. App'x 176, 178-80 (3d Cir. 2011)
(acknowledging civil litigants have no statutory right to
counsel and finding district court did not abuse its discretion
in denying motion to appoint counsel in social security appeal);
see also Gabrys v. Astrue, No. 12-6099, 2012 WL 6527331, at *1-
2 (E.D. Pa. Dec. 14, 2012) (denying motion for appointment of
counsel in social security appeal and noting "[i]t is well
settled that 'indigent civil litigants possess neither a
constitutional nor a statutory right to appointed counsel'")
(quoting Gordon v. Gonzalez, 232 F. App'x 153, 156 (3d Cir.
2007)). Moreover, it is undisputed that Plaintiff was
represented by counsel throughout the proceedings below and that
counsel fully participated in submitting evidence and examining
the witnesses at the hearing before the ALJ. (R. 38-93.) See,
e.g., 42 U.S.C. § 406; Phifer v. Comm'r of Soc. Sec., 84 F.
App'x 189, 190-91 (3d Cir. 2003). Thus, the Court finds
Plaintiff's allegations to be without merit.

5176, 2013 WL 5322711, at *3 n.5 (D.N.J. Sept. 20, 2013) (citing McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004)); Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003); SSR 85-28). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," and include (1) "Physical functions;" (2) "Capacities for seeing, hearing, and speaking;" (3) "Understanding, carrying out, and remembering simple instructions;" (4) "Use of judgment;" (5) "Responding appropriately to supervision, co-workers and usual work situations;" and (6) "Dealing with changes in routine work setting." 20 C.F.R. § 416.921(b); see also Rosa v. Comm'r of Soc. Sec., No. 12-5176, 2013 WL 5322711, at *6 (D.N.J. Sept. 20, 2013). In determining the degree of functional limitation presented by a mental impairment, the ALJ assesses four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)-(d).

Here, the ALJ determined that, while the medical evidence reflected a diagnosis of dysthymic disorder,[3] the record reflected no treatment for an emotional condition and the mental

---

[3] "Dysthymic disorder . . . involves either depressed mood or loss of interest or pleasure in all or almost all usual activities and pastimes, and associated symptoms, but not of sufficient severity and duration to meet the criteria of a major depressive episode.'" Rosa, 2013 WL 5322711, at *3 n.5 (quoting Mosby's Dictionary 564).

status findings did not support any moderate limitations. (R. 24.) Specifically, the Psychological Consultative Examination reflects that Plaintiff exhibited appropriate emotional responsiveness, logical and coherent thoughts, good attention, intact memory, and good judgment. (Id. at 24; see also id. at 397-98.) The Report notes Plaintiff's concentration was impaired in that he could not do serial 7s and made an error in serial 3s, and he had impaired abstracting abilities. (Id. at 397.) However, he did not suffer delusions or hallucinations and denied suicidal/homicidal ideation. (Id. at 24; see also id. at 398.) The ALJ further noted that a report by the State agency psychologist, Dr. Wieliczko, concluded that Plaintiff had only mild limitations for daily activities, no limitations in social functioning and only moderate limitations regarding concentration, pace and persistence with no episodes of decompensation. (R. 24 (citing Exs. 10F and 11F).) Dr. Wieliczko noted these "conditions are not so severe that they would prevent [Plaintiff] from meeting the mental demands of simple work related activities." (R. 426.) In finding that dysthymic disorder is not a severe impairment, the ALJ also placed great weight on the testimony of impartial medical expert Dr. Luis E. Canepa, who supported most of Dr. Wieliczko's conclusions. (Id. at 24.) Dr. Canepa testified that the claimant has mild limitations for daily activities, social functioning, and

concentration and no episodes of decompensation. (Id.; see also
id. at 71-73.) This evidence supports the ALJ's conclusion that
Plaintiff's dysthymic disorder was not a severe impairment. See
Berrocal v. Astrue, No. 10-cv-02226, 2011 WL 890150, at *3
(D.N.J. Mar. 14, 2011) (finding substantial evidence supported
ALJ's conclusion that evidence does not support a claim of
severe mental impairment). Moreover, the record contains no
medical evidence of Plaintiff's alleged agoraphobia. The burden
of persuasion lies with Plaintiff to demonstrate the existence
of a severe impairment and Plaintiff failed to do so with
respect to depression or agoraphobia. See, e.g., Sykes, 228 F.3d
at 263; Walker v. Astrue, No. 12-07042, 2013 WL 5947008, at *6
(D.N.J. Nov. 4, 2013).

Notably, Plaintiff points to no evidence in the record that
the ALJ failed to consider but rather appears to be claiming
that new evidence concerning his medical conditions, and in
particular his alleged mental impairments, demonstrate his
entitlement to benefits. (See Compl. 2; see also Dkt. Ent. 26.)
Specifically, Plaintiff submits a letter dated November 13, 2013
from Sara Baran, M.A., a Clinician at South Jersey Behavioral
Services. (Dkt. Ent. 25.) Ms. Baran advises that Plaintiff
attended an intake appointment on February 8, 2013, reported
symptoms such as insomnia, weight gain, decreased appetite,
hopelessness, helplessness, lack of motivation, crying when

14

alone, and a sad mood. He was diagnosed with Adjustment Disorder with Depressed Mood. (Id. at 3.) Since then, he has been attending individual therapy 1-2 times per month. Ms. Baran also relates that Plaintiff indicated his mental health issues began some time after his diagnosis with congestive heart failure. (Id.) This evidence does not significantly augment the record considered by the ALJ as it indicates only that Plaintiff began experiencing mental health issues during the relevant period. He did not seek treatment, however, until early 2013--well over two years beyond the relevant period--and thus the extent of the symptoms described during his intake procedure cannot even be attributed to the relevant period. See Hagans v. Astrue, No. 10-1951, 2011 WL 1344188, at *13 (D.N.J. Apr. 8, 2011) ("If the new evidence suggests that Plaintiff's condition may have become disabling subsequent to the cessation of benefits, or there is a new impairment, Plaintiff must file a new application."), aff'd 694 F.3d 287 (3d Cir. 2012); Tommas v. Astrue, No. 10-2495, 2011 WL 5599699, at *6 (D.N.J. 2011) ("Material evidence is 'relevant and probative,' and must pose a 'reasonable possibility' of changing the ALJ's decision. An 'implicit' requirement of materiality is that the evidence must 'relate to the time period for which benefits were denied.' Moreover, the new evidence cannot be of either 'a later-acquired disability or of the subsequent deterioration of the previously non-disabling

condition.'" (internal citations omitted)); <u>Thomas v. Chater</u>, 945 F. Supp. 104, 105 (D. V.I. 1996).[4] Thus, the Court must uphold the ALJ's finding as supported by substantial evidence.

Regardless, any error related to this "evidence" would not necessitate remand in light of the other severe impairments assessed by the ALJ. <u>See</u> <u>Rosa</u>, 2013 WL 5322711, at *7 ("The Third Circuit has indicated that an ALJ's erroneous finding that some of a claimant's impairments are not severe at step two is harmless if the ALJ finds that the claimant has other severe impairments.").

## 2. Evaluation of Plaintiff's RFC

Next, Plaintiff appears to challenge the ALJ's evaluation of his RFC on grounds that he improperly discounted the opinions of the treating physicians and failed to consider the effect of Plaintiff's obesity on his ability to do work activities.[5] These arguments are meritless.

---

[4] For similar reasons, the letter dated October 14, 2013 from Jennifer Burrows, PA-C, of Berlin Medical Associates does not constitute new evidence. (<u>See</u> Dkt. Ent. 27.) Ms. Burrows notes a recently-developed increase in ankle and knee pain and opines that "Michael cannot work at this time." (<u>Id.</u>) However, these recent developments and/or aggravations in Plaintiff's condition are well outside the relevant period addressed by the ALJ's decision. <u>See</u> <u>Hagans</u>, 2011 WL 1344188, at *13; <u>Tommas</u>, 2011 WL 5599699, at *6; <u>Chater</u>, 945 F. Supp. at 105.

[5] The Court interprets Plaintiff's arguments as challenging the ALJ's conclusions regarding Plaintiff's ability to perform other jobs in the national economy, and thus addresses these arguments in the context of the ALJ's RFC finding. <u>See</u> <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 201 (3d Cir. 2008)

An ALJ must consider every medical opinion in the record and decide how much weight to give each. 20 C.F.R. § 404.1527(c). An ALJ must, however, accord "treating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal citations omitted). However, the opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with other substantial evidence in the record." Alexander v. Shalala, 927 F. Supp. 785, 7994-95 (D.N.J. 1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996). The ALJ must also consider the findings and opinions of state agency medical consultants and other sources consulted in connection with the hearing. 20 C.F.R. § 404.1527(e)(2)(i). If non-examining medical source opinions are supported by medical evidence in the record, they may constitute substantial evidence and override a treating physician's opinion. Alexander, 927 F. Supp. at 795. "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong

---

("Johnson's arguments regarding Dr. Hunter's opinions challenge the ALJ's conclusions regarding Johnson's ability to perform 'past relevant work' and 'several other jobs' in the national economy. We construe this as a challenge to the ALJ's step four finding . . . ."); Sullivan v. Comm'r of Soc. Sec., No. 12-7668, 2013 WL 5973799, at *7 n.4 (D.N.J. Nov. 8, 2013).

reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer, 186 F.3d at 429 (internal citations omitted). An ALJ errs by failing to address evidence in direct conflict with his findings. Landeta v. Comm'r of Soc. Sec., 191 F. App'x 105, 110 (3d Cir. 2006); see also Richardson v. Comm'r of Soc. Sec., No. 12-6422, 2013 WL 5816883, at (D.N.J. Oct. 29, 2013).

Here, Plaintiff points to the opinions of Dr. Cohen, his treating cardiologist, and Dr. Malik, an associate in Dr. Wallach's office, whom Plaintiff maintains suggested more significant limitations than those included as part of Plaintiff's RFC. (See Compl. at 8-9.)[6] As the ALJ acknowledged, Dr. Cohen's notes refer to Plaintiff as "totally disabled" or "profoundly debilitated," and also question his ability to work. (R. 438, 480, 484.) However, the ALJ was not required to attribute controlling weight to these opinions because the ultimate determination of whether an individual is disabled or unable to work is reserved for the Commissioner. 20 C.F.R. § 404.1527(d) & (d)(1). Accordingly, under the regulations, "[a]

---

[6] Plaintiff also suggests that the ALJ failed to account for Dr. Wallach's opinions, but points to no specific opinion or evidence dismissed by the ALJ and a review of the medical records revealed none. (See Compl. at 9.) In addition to the extent that Plaintiff maintains that the other physicians' opinions also contradict the ALJ's RFC, this argument is incorrect. (Compare R. 429-36 (Dr. Cirrillo) & 459-66 (Dr. Weisbrod), with R. 25.)

statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96–5p (1996); see also 20 C.F.R. § 404.1527(d)(3); Smith v. Comm'r of Soc. Sec., 178 F. App'x 106, 112 (3d Cir. 2006). The ALJ recognized that Dr. Cohen's opinion was "of evidentiary value" but determined that it was also "clearly unsupported by the rest of the evidence in the record" (R. 29), which demonstrates that the cardiac conditions were responsive to treatment. This evidence includes Dr. Cohen's own reports, which reflect that Plaintiff's congestive heart failure was largely compensated (R. 27-28; see also id. at 480, 491), and his peripheral edema had improved through treatment with Lasix therapy (id. at 27-28; see also id. at 491). He further notes that Plaintiff's "motor exam was . . . normal." (id. at 480; see also id. at 491.) Dr. Malik had also reported that Plaintiff's atrial fibrillation "was stable and controlled with Coumadin." (Id. at 27; see also id. at 479.) In addition, Dr. Klausman, consultative physician, observed that Plaintiff had lumbar limitation of motion and positive straight leg raising, but that he walked "with a normal gait", got and off the examining table without difficulty, and sat up without assistance. (Id. at 23, 28, 407.) Accordingly,

the ALJ did not err in according less weight to Dr. Cohen's conclusions on an issue reserved to the ALJ, especially in light of the medical evidence. Sternberg v. Comm'r of Soc. Sec., 438 F. App'x 89, 98 (3d Cir. 2011) ("There was medical evidence in the record—the objective medical evidence cited above—that contradicted Dr. O'Hara's opinion. Furthermore, his opinion that Sternberg was 'unemployable/disabled' was not entitled to any special significance, as it is a determination explicitly left to the ALJ."); Russo v. Astrue, 421 F. App'x 184, 191 (3d Cir. 2011) ("We also note that Dr. Nashed's opinion whether Russo should receive disability benefits was not entitled to controlling weight because that determination is reserved for the Commissioner. . . . Dr. Nashed could properly opine on Russo's functional limitations but not the ultimate issue whether Russo was eligible for benefits." (internal citations omitted)); Adorno, 40 F.3d at 47–48; see also Plummer, 186 F.3d at 429.

As to Dr. Malik, he provided an RFC assessment that indicated Plaintiff was able to sit, stand, and walk for less than one hour a day (R. 476), which would preclude the performance of any work activities (see id. at 48). The ALJ, however, rejected Dr. Malik's assessment as inconsistent with Dr. Wallach's assessments and otherwise unsupported by the

medical evidence. (Id. at 28.) The Court does not find this to
be in error. Dr. Wallach, whose opinions Plaintiff requests this
Court to consider significant (Compl. at 1), reported only
limitations related to lumbar spine flexion. (See R. 445-47; see
also id. at 357 (declining to provide work-related
limitations).) As to Plaintiff's pain, Drs. Wallach and Malik
referred Plaintiff for pain management treatment but the record
reflects no treatment notes. (Id. at 27.) Despite his pain, Dr.
Klausman, concluded that Plaintiff showed only mild degenerative
joint disease (id. at 402) and his observations reflected that
Plaintiff's "physical mobility and functions remained adequate."
(Id. at 27; see also id. at 402.) Moreover, Dr. Malik's RFC
acknowledged that Plaintiff's pain could be mediated through
pain management treatment and medication, which he stated has
proven successful for similar complaints in other patients. (Id.
at 477-78.) The ALJ also observed Plaintiff at the hearing and
concluded that his demeanor at the hearing and throughout the
record do not substantiate the "severe physical distress or
limitations as alleged." (Id. at 27.) Further, to the extent Dr.
Malik opined that Plaintiff's pain is distracting and likely to
increase with walking, standing, bending, or stooping, the ALJ
implicitly acknowledged such limitations in crafting Plaintiff's
RFC. (Compare id. at 477, with id. at 25.). Accordingly, the
Court finds that the ALJ's explanation for why he rejected the

limitations suggested by Dr. Malik is supported by substantial evidence. See also Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148-49 (3d Cir. 2007) ("Because the consultative physician's observations were more consistent with the weight of the evidence, the ALJ properly afforded them greater weight than the opinion of the treating physician.").

Finally, Plaintiff seemingly argues that the ALJ failed to account properly for any functional limitations due to Plaintiff's obesity. (R. 28.) SSR 02-1p provides:

> The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

As the ALJ recognized, "[t]he effects of obesity may not be obvious"; for example, obese individuals may suffer from sleep apnea, which may lead to drowsiness and lack of mental clarity. (R. 28 (citing SSR 02-1p).) In accordance with SSR 96-8p, the ALJ's RFC assessment must consider Plaintiff's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-1p (citing SSR 96-8p); (see also R. 28). In his opinion, the ALJ acknowledged the requirements of SSR 02-1p and found that

Plaintiff's obesity constituted a severe impairment in light of the medical evidence. (See R. 20-25, 28.) The ALJ also addressed the impact of Plaintiff's obesity on his ability to perform work activities and found that "it does not have a significant impact on his other body systems or that it does not affect significantly his ability to ambulate, mobility or manipulation." (Id. at 28.) This determination is supported by substantial evidence.

For example, as discussed above, Dr. Klausman noted that Plaintiff's gait was normal, he climbed on and off the examining table without difficulty, he was able to lie down and sit up without assistance, and he exhibited "normal hand movements . . . . within normal limits bilaterally." (R. 27, 407; see also id. at 426 (Dr. Wieliczko reported Plaintiff's "gait/posture are normal").) Dr. Malik also noted Plaintiff did not have difficulty with manipulating objects, and was capable of grasping, pushing and pulling objects with both hands. (Id. at 438, 476.) Dr. Cohen continually observed that Plaintiff's motor exam was normal (see, e.g., id. at 480), and the ALJ observed no obvious difficulty in ambulation or mobility throughout the hearing (id. at 27). Furthermore, Dr. Rolon-Rivera, impartial expert, Dr. Cirillo, and Dr. Weisbrod found physical limitations consistent with the RFC as determined by the ALJ. (See id. at6 28-29, 62-67, 429-36, 459-66). As such, the Court concludes that

the ALJ properly accounted for Plaintiff's obesity and his
decision that it does not impose limitations on Plaintiff's
ability to perform work activities is supported by substantial
evidence. See Martin v. Comm'r of Soc. Sec., 369 F. App'x 411,
414-15 (3d Cir. 2010) (determining ALJ properly addressed
plaintiff's obesity and findings were supported by substantial
evidence); see also Cruse v. Astrue, No. 09-1316, 2010 WL
1133423, at *3 n.15 (W.D. Pa. March 23, 2010) (finding ALJ
properly addressed obesity in evaluating medical evidence).[7]

### 3. Vocational Expert Testimony

Plaintiff also appears to challenge the ALJ's reliance on
the vocational expert's testimony and correspondingly, the ALJ's
conclusion that Plaintiff can perform other jobs with his
limitations. At Step 5, the ALJ evaluates Plaintiff's ability to
adjust to other work through consideration of Plaintiff's RFC,
and "the vocational factors of age, education, and work
experience." 20 C.F.R. § 416.960(c)(1). This other work must
exist in significant numbers in the national economy. Id.; 20
C.F.R. § 416.966(a). In making this evaluation, the regulations
permit the ALJ to rely upon the Medical-Vocational Guidelines,

---

[7] Plaintiff cites a history of childhood health problems but
has failed to demonstrate that those impairments continued
during the relevant period or that they caused greater
functional limitations that those included in the RFC. Cf. 20
C.F.R. § 404.1527(c) ("You must provide medical evidence showing
that you have an impairment(s) and how severe it is during the
time you say that you are disabled.").

which were promulgated by the Secretary of Health and Human Services and which "establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform." Schmidt v. Comm'r of Soc. Sec., No. 12-06825, 2013 WL 6188442, at *10 n.2 (D.N.J. Nov. 25, 2013); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(b) (hereinafter "App. 2"). Here, because the ALJ determined that Plaintiff suffered exertional and non-exertional limitations, he properly obtained testimony from a vocational expert, Dr. Gara. See 20 C.F.R. § 404.1566(e), § 416.960, § 416.969a; see also Sykes, 228 F.3d at 273; Kuczewski v. Comm'r of Soc. Sec., 2013 WL 1007684, at *4 (D.N.J. March 12, 2013) (citing cases); Chater, 933 F. Supp. at 1279 ("The testimony of a vocational expert constitutes substantial evidence for purposes of an ALJ's decision. Here, the expert indicated that 1,500 jobs within plaintiff's capacities exist in the Caribbean region. No more is required." (internal citations omitted)). Dr. Gara testified that a person with Plaintiff's limitations[8] and "considering his age, education and work experience," Plaintiff would have to perform a sedentary job of which Dr. Gara provided three examples:

---

[8] These limitations are lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours in an 8-hour day alternating every 2 hours; standing and walking for 2 hours in an 8-hour day; occasionally climbing stairs but never stooping, crouching, kneeling, or crawling; avoiding exposure to unprotected heights; and avoiding concentrated exposure to gases, fumes, dust, and to extreme heat or cold. (R. 79.)

(1) stem mounter, DOT 692.685-206, with 1,100 regional jobs and 165,800 national jobs, (2) patcher, DOT 789.687-174, with 900 regional jobs and 165,800 national jobs, and (3) getterer, DOT 692.685-266, with 1,300 regional jobs and 165,800 national jobs. (R. 30; see also id. at 79-81.)

Plaintiff lodges a general attack on the ability of the SSA to rely on such data concerning the numbers of available positions and insists that the SSA must prove that a specific position is available for Plaintiff. That is contrary to the regulations and caselaw, which have long recognized that an ALJ may appropriately rely upon the testimony of a vocational expert while utilizing the Medical-Vocational Guidelines as a framework. Santise v. Schweiker, 676 F.2d 925, 927-28 (3d Cir. 1982).[9] Moreover, the regulations permit the use of "job information available from various governmental and other publications," including for example the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. 20 C.F.R. § 416.966(d); SSR 00-4p. However, contrary to Plaintiff's contention (see Opp. 4), "[i]t does not matter whether--(1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You

---

[9] See SSR 83-12 ("The adjudicator will consider the extent of any erosion of the occupational base and access its significance. . . . Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.").

would be hired if you applied for work." 20 C.F.R. § 416.966(a);
see also Wafford v. Comm'r of Soc. Sec., No. 09-00805, 2010 WL
5421303, at *5 (S.D. Ohio Aug. 19, 2010) ("There is no
requirement that there are potential jobs available in the
immediate area where plaintiff lives, as long as there are jobs
available nationally and are not all concentrated in one
region." (citing Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir.
1999))).

Plaintiff next appears to contend that the job requirements
of getterer, patcher, and stem mounter conflict with the ALJ's
RFC determination inasmuch as they require exposure to gases.
(Opp. 9.) A stem mounter works on light bulbs by attaching wire
to a glass stem using a brush and carbon cement.[10] A getterer
applies a chemical solution to lead wires used to make
incandescent lamps.[11] A patcher covers wired electrical appliance
components with insulation by applying a type of adhesive.[12]
Neither the ALJ nor the vocational expert addressed whether the
carbon cement or chemical solutions applied by the stem mounter
or getterer would involve "concentrated exposure" to gases and

_____

[10] See DOT 725.684-018, https://www.oalj.dol.gov/LIBDOT.HTM
(last visited Feb. 5, 2014). Although the DOT numbers provided
by the vocational expert were different, the Court was able to
identify the positions based upon the job titles and
descriptions given by the vocational expert.

[11] See DOT 725.687-022.

[12] See DOT 723.687-010.

fumes, which Plaintiff must avoid according to his RFC. (See R. 25.) Notably, Plaintiff and his counsel did not question the vocational expert about this seeming contradiction during the hearing. (See R. 47.) However, the vocational expert testified that these three jobs represented examples of positions that Plaintiff could perform and did not constitute the only positions available to him. (R. 81, 83.) Moreover, because there is no suggestion that the adhesive utilized by a patcher involves any type of gas or fume, and because it is sufficient for the ALJ to identify at least one job that exists in significant numbers, the Court finds that remand for this issue is not necessary. See, e.g., Schmits v. Astrue, 386 F. App'x 71, 76 (3d Cir. 2010) (substantial evidence supported finding that claimant could work as surveillance system monitor); Rutherford v. Barnhart, 399 F.3d 546, 554-58 (3d Cir. 2005) ("As for the other instances of claimed inconsistency, which relate to two jobs identified by the expert with specified vocational preparation classifications that render them beyond the ALJ's limitation to unskilled work, they are simply not egregious enough—either in number or in substance—to bring into question the ALJ's reliance on the expert testimony as a whole."); see also 20 C.F.R. § 404.1566(b).

Finally, Plaintiff seemingly asserts that the ALJ erred in concluding that Plaintiff could perform other work because he

failed to account for Plaintiff's illiteracy. The regulations provide four education-related categories established by the regulations: "high school graduate or more"; "limited or less"; "marginal or none"; and "illiterate or unable to communicate in English." 20 C.F.R. § 404.1564 & App. 2. A person is considered "illiterate if the person cannot read or write a simple message." 20 C.F.R. § 404.1564(b)(1). Education "is ascertained by measuring the amount of any 'formal schooling or other training which contributes to [Plaintiff's] ability to meet vocational requirements,' but evidence relating to test scores, past work experience and responsibilities, and daily activities also may be considered." Santise, 676 F.2d at 927 n.5. "The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education." 20 C.F.R. § 404.1564(b). Here, in considering all of Plaintiff's severe impairments, the ALJ determined that Plaintiff was a younger individual, with a high school education and non-transferrable skills, who retained the RFC to perform some light work. (R. 25-30.) Based on these findings, § 202.21 of the Medical-Vocational Guidelines would direct a finding of "not disabled" before consideration of Plaintiff's additional limitations. (See R. 30); App. 2. Even if the ALJ had concluded that Plaintiff were illiterate, both § 202.16 (light work) and § 201.23 (sedentary work) would still suggest a finding of "not

disabled," especially because the work being considered is unskilled benchwork.[13] See id. As the vocational expert indicated, these jobs involve assembly work and the materials are provided to Plaintiff at his bench; the job descriptions do not necessitate an ability to read or write. (R. 48.) Thus, the Court would not remand on this point alone.

In any event, the record contains sufficient evidence demonstrating that while Plaintiff may not read or write well, he has sufficient abilities that he is able to communicate in English. (See R. 29.) Plaintiff's testimony that he has "trouble with reading," and also "can't read and write that good" is consistent with this conclusion. (R. 51, 52, 60 (emphasis added); see also id. at 265 ("I can't read good.").)[14] Moreover, Plaintiff graduated from twelfth grade and was ranked 250/330

_____

[13] App. 2, § 202.00(g) ("While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly, the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.").

[14] Plaintiff also acknowledged in at least one form that he is able to pay bills (R. 245), which suggests some ability to read and write. (See also R. 399 (noting that Plaintiff handles his own finances).)

students. (R. 83.) The few school records in evidence do not mention an inability to read or write, though they do suggest receipt of some special education services. (R. 281-84.) More importantly, however, the social security record contains several handwritten documents, written in the first-person, which were completed by Plaintiff — indeed, he admitted to completing application(s) for benefits — all of which undermine his assertion that he is unable to read or write a simple message. (<u>See, e.g.</u>, R. 249, 267.) In light of this evidence, the Medical-Vocational Guidelines, and the job descriptions provided, the Court finds substantial evidence supporting the ALJ's decision.

**IV.  CONCLUSION**

For the reasons set forth above, the decision below is AFFIRMED.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge


        Date: February 11, 2014